IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | 1:12-cr-507 (LMB) |
| ) | 1:14-cv-1135 (LMB) |
| KHALIL BLACKMAN, ) | |
| ) | |
| Movant. ) | |

## MEMORANDUM OPINION

Khalil Blackman ("Blackman" or "movant"), proceeding pro se, has timely filed a Motion to Vacate Conviction under 28 U.S.C. § 2255 ("Motion to Vacate"), in which he raises numerous claims of ineffective assistance of counsel and prosecutorial misconduct. The government has filed an opposition to the motion and attached a declaration from Blackman's trial counsel; Blackman has filed a reply brief. Having reviewed the entire record, the Court finds no merit to Blackman's motion, which will be dismissed without the need for an evidentiary hearing.

### I. BACKGROUND

#### A. Factual Background

In early 2011, Blackman entered into a conspiracy with three other individuals, Avery Bines, James Acker, and Michael Sylvester, to commit armed robbery. Tr. Bench Trial 162-63 (Feb. 4, 2013) [Dkt. No. 52]. Over the next ten months, Blackman and his co-conspirators planned and committed three armed robberies of delivery truck drivers working for Mark IV Transportation & Logistics, which served as a transportation contractor for Apple, Inc. Following each robbery, Blackman acted as the "fence"—the individual responsible for disposing of the stolen goods.

The first robbery took place in February 2011. Bines and Blackman waited in a van across the street from a Mark IV warehouse where a delivery truck was scheduled to be loaded with Apple products. Id. at 57, 107. Acker, armed with a gun, and Sylvester approached the Mark IV driver, forced the driver inside his truck at gunpoint, and ordered him to drive a short distance to a predetermined location, while Acker still held the gun to the driver's head. Id. at 57, 108. Bines and Blackman followed them to the scheduled meeting place and proceeded to unload the stolen products into the van while Acker bound the delivery truck driver and Sylvester acted as lookout. Id. at 58, 166-68. Blackman sold the stolen items and gave his co-conspirators their shares of the proceeds. Id. at 58, 169-70.

The second robbery took place in June 2011. Blackman again participated in the planning discussions, which included the planned use of a firearm. Id. at 59-60, 170-72. On the day of the robbery, Bines, Acker, and Sylvester tailed a Mark IV delivery truck to the Fair Oaks Mall in Fairfax County, Virginia. Id. at 60-61, 172-73. The truck driver made his delivery inside the mall and then left the mall premises. Id. at 24. Shortly thereafter, Sylvester intentionally drove the conspirators' vehicle into the Mark IV truck. Id. at 62-63, 173-74. When the Mark IV driver exited his truck to see what had happened, Acker forced him back into the truck at gunpoint, and Sylvester drove the truck to a second location. Id. at 25-27, 63-64. At that second location, Acker bound the truck driver's hands and Sylvester kept watch over the truck driver while Acker and Bines unloaded the Apple products. Id. at 29, 64, 179. Blackman later sold the stolen Apple goods and compensated his co-conspirators accordingly. Id. at 65-67, 180-82.

The final, and largest-scale, robbery took place in October 2011. In preparation, Blackman rented a U-Haul truck to transport the goods that they intended to steal, and Acker

recruited three other individuals to aid in the robbery. Id. at 67-68, 185. All of the conspirators except for Blackman were present during the actual robbery. Id. at 68. During the course of the robbery, one of the conspirators struck the Mark IV driver in the head with a firearm to subdue him while some of the other conspirators unloaded goods from the delivery truck into the U-Haul truck. Id. at 69-70, 145-48, 186-187. Once again, Blackman fenced the stolen goods. Id. at 70-71, 189-90.

### B. Procedural History

As a result of these events, Blackman, Acker, Bines, and Sylvester were arrested on a criminal complaint. Each of Blackman's three co-conspirators entered plea agreements under which they waived indictment, pleaded guilty to a one-count criminal information,[1] and agreed to cooperate with the government. The charge to which each pleaded guilty carried a mandatory minimum sentence of seven years imprisonment. Each conspirator received, among other penalties, a sentence of ten years imprisonment.[2] See United States v. Acker, No. 1:12-cr-291 (E.D.V.A. judgment entered Oct. 15, 2012); United States v. Sylvester, No. 1:12-cr-334 (E.D.V.A. judgment entered Oct. 15, 2012); United States v. Bines, No. 1:12-cr-293 (E.D.V.A. judgment entered Sept. 28, 2012).

In contrast, Blackman apparently declined a pre-indictment plea deal, retained Jonathan A. Simms ("Simms") as trial counsel, see Def.'s Mot. Vacate, Ex. 2, and was indicted on two counts on December 6, 2012. Count One charged him with conspiring from January 2011 to June 2012 to commit robbery, in violation of 18 U.S.C. § 1951(a). Indictment 1-4 [Dkt. No. 14].

---

[1] Specifically, all three of Blackman's co-conspirators pleaded guilty to using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c). The underlying crime of violence was robbery, in violation of 18 U.S.C. § 1951(a).

[2] Two of these three conspirators subsequently received sentence reductions based upon motions from the government.

Count Two charged him with using, carrying, and brandishing a firearm during and in relation to a crime of violence from January 2011 through June 2012, in violation of 18 U.S.C. §§ 2 and 924(c). Id. at 5. Following the return of his indictment, Blackman declined two plea offers, waived a jury trial, and a one-day bench trial was held on February 4, 2013. The Court found Blackman guilty of both counts. Tr. Bench Trial 305. Blackman was sentenced on May 17, 2013, to 36 months on Count One and the mandatory minimum of 84 consecutive months on Count Two, for a total sentence of ten years imprisonment, the same term of imprisonment received by each of his co-conspirators. Blackman also received three years of supervised release on Count One and five years of supervised release on Count Two, to run concurrently. Lastly, he was ordered to pay a total of $136,601.03 in restitution plus a $200 special assessment; no forfeiture was imposed.

Blackman was represented on appeal by Marvin D. Miller ("Miller").[3] His appeal raised two issues. First, he argued that there was no evidence that he aided and abetted the brandishing of a weapon during a crime of violence and, therefore, should not have been convicted on Count Two. Second, he argued that there was insufficient evidence to prove that there was one conspiracy encompassing all three robberies (Count One) rather than three separate conspiracies. The government cross-appealed the Court's decision not to impose a forfeiture judgment. In a published opinion, the Fourth Circuit affirmed both convictions, finding that the evidence of guilt was sufficient. See United States v. Blackman, 746 F.3d 137 (4th Cir. 2014). Specifically, the court held that Blackman's conviction on Count Two was appropriate under Pinkerton v.

---

[3] Blackman retained Miller in April 2013 and terminated Simms' representation shortly thereafter. See Gov.'s Opp'n, Ex. 1 ("Simms' Decl.") ¶ 22. Accordingly, Miller represented Blackman during his sentencing hearing in May 2013. On appeal, Blackman's application to proceed under the Criminal Justice Act ("CJA") was granted, and Miller was appointed as his appellate counsel under the CJA.

4

United States, 328 U.S. 640 (1946), which provides that a defendant is "liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy," and that "the evidence was plainly sufficient" to support his conviction on this count. Blackman, 746 F.3d at 141 (internal quotation marks omitted). The Fourth Circuit also found that "the evidence detailing the overlap of actors, methods, and aims in the three robberies was plainly sufficient to support the district court's finding of a single conspiracy" as charged in Count One. Id. at 142, n.1. The Fourth Circuit reversed only on the issue of forfeiture, remanding with directions for the Court to enter a forfeiture money judgment for $136,601.03. See id. at 145.

## II. DISCUSSION

In his Motion to Vacate, Blackman raises a number of claims falling into two broad categories. First, he claims that his Sixth Amendment rights were violated due to the ineffective assistance of both his trial and appellate counsel. Second, he claims that his Fifth Amendment rights were violated by prosecutorial misconduct.

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail on a § 2255 motion, the movant bears the burden of proving his grounds for relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). An evidentiary hearing in a § 2255 proceeding must be held if the movant alleges facts which, if true, would entitle him to relief. See United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992).

A hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Id. (quoting 28 U.S.C. § 2255(b)).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral attack on his conviction or sentence. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

### B. Ineffective Assistance of Counsel Claims

Blackman contends that his retained trial counsel, Simms, violated his right to effective assistance of counsel by: (1) failing to timely communicate the government's plea offers; (2) providing deficient legal advice regarding the government's plea offers; (3) improperly advising Blackman to waive his right to a jury trial; (4) failing to adequately investigate Blackman's criminal history and prepare a defense witness for trial; (5) failing to call an expert witness at trial; (6) failing to sufficiently impeach two of the government's witnesses; and (7) declining to timely file a motion for a new trial. Blackman also contends that his appellate counsel, Marvin D. Miller ("Miller"), violated his right to effective assistance of counsel by failing to argue on appeal that the district court committed error by failing to advise him of his right to file a post-trial motion for a new trial.

To establish ineffective assistance of counsel, Blackman must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a showing of both deficient performance by counsel and prejudice to the defendant resulting from that deficient performance. Deficient performance is defined as performance falling below an objective standard of reasonableness. Id. at 687-88. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," "[j]udicial scrutiny of counsel's performance must be highly deferential," and the defendant bears the burden of overcoming "a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance." Id. at 689. Prejudice to the defendant is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also id. ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Lastly, "there is no reason for a court deciding an ineffective assistance claim" to resolve "both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

1. Claims Involving Trial Counsel

    a. Failure to timely communicate plea offers

Blackman first claims that Simms provided ineffective assistance of counsel by failing to timely communicate the government's plea offers. Blackman's version of events is contradicted by Simms' declaration and by the emails attached to Blackman's Motion to Vacate. According to Blackman, Simms only informed him of the government's initial plea offer, which included a recommended seven-year sentence, after it had expired on November 30, 2012; however, Blackman acknowledges that Simms, who had recently been substituted into the case, obtained an extension of this initial offer until December 31, 2012. See Def.'s Mot. Vacate 12 & Ex. 3. Blackman further states that, even after this extension, Simms still failed to discuss the plea offer

7

and instead let it expire, rejected it, and made a counteroffer, all without consulting Blackman. See id. at 12-13. In his declaration, Simms avers that he arranged for a meeting on December 18, 2012, with AUSA Marc Birnbaum, a Fairfax County detective, and Blackman, during which the government's initial plea offer was discussed. See Gov.'s Opp'n, Ex. 1 ("Simms' Decl.") ¶ 8; Def.'s Mot. Vacate, Ex. 13 (December 19, 2012, email from Simms to AUSA Birnbaum referencing the previous day's meeting). Simms further asserts that he met with Blackman on December 29 to discuss the plea offer and possible trial strategy, and Blackman expressed that he did not want to accept an offer that would result in a mandatory minimum sentence of seven years. See Simms' Decl. ¶ 10. Blackman's affidavit, attached to his Motion to Vacate, contains no mention of the seven-year offer; thus, Simms' representations are essentially uncontested.

On January 3, 2013, the government responded with a new, final plea offer with a recommended sentence of five years. See Def.'s Mot. Vacate 13 & Ex. 5. Blackman claims in his motion that he was only made aware of the new offer after it had expired. See Def.'s Mot. Vacate 13. Simms avers that he met with Blackman on January 8, the day before the five-year offer was set to expire. See Simms' Decl. ¶ 12; see also Def.'s Mot. Vacate, Ex. 8. The government then granted a one-day extension on its offer. See Def.'s Mot. Vacate, Ex. 7. On January 10, Simms informed the government that Blackman had rejected the five-year offer. See id. at Ex. 6. Indeed, Blackman admits in his affidavit that he received the government's five-year offer but chose to reject it after speaking with Simms regarding potential trial strategies. See id. at Ex. 1 ("Blackman Aff.") ¶¶ 8-10; see also Def.'s Mot. Vacate 13 ("However, Petitioner [Blackman] ultimately rejected the government's five-year plea offer."). Because Blackman avers that he considered the five-year plea offer and rejected it in favor of going to trial, he cannot show prejudice from any alleged untimely communicated prior offers.

8

### b. Providing deficient legal advice regarding plea offers

Blackman next claims that Simms provided ineffective assistance of counsel by giving him deficient legal advice regarding the government's plea offers. Specifically, Blackman claims that he rejected the five-year offer based on Simms' representations that: he would call an expert witness at trial; the government would not be able to prove Blackman was part of a robbery conspiracy because the February 2011 robbery was only a theft; and Blackman's criminal record would remain private as long as he did not testify. See Blackman Aff. ¶¶ 8-11; Def.'s Mot. Vacate 27-29. Blackman further asserts that Simms did not explain what a conspiracy meant or how he could be held liable under Pinkerton. Blackman Aff. ¶ 12; Def.'s Mot. Vacate 29. Instead, Simms did not call an expert witness; Blackman was found guilty of participating in a conspiracy to commit robbery; and Blackman's prior convictions, including a firearms conviction, were disclosed during the cross-examination of Blackman's sister, who testified to Blackman's good character.

To satisfy Strickland's prejudice prong in the context of a rejected plea, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that ... the defendant would have accepted the plea ... and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012). For a defendant "to demonstrate a reasonable probability that he would have accepted a plea, [his] testimony that he would have done so must be credible." Merzbacher v. Shearin, 706 F.3d 356, 366-67 (4th Cir. 2013). A defendant's "after the fact testimony concerning [his] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (quoting Diaz

9

v. United States, 930 F.2d 832, 835 (11th Cir. 1991)), appeal dismissed, 490 F. App'x 583 (4th Cir. 2012) (per curiam) (denying certificate of appealability).

There is nothing in the record that suggests Blackman ever intended to plead guilty to the offenses with which he was charged. See Berry, 884 F. Supp. 2d at 463. Blackman repeatedly stated that he hired Simms with the specific intention to proceed to trial from the outset. See Blackman Aff. ¶ 5 ("I retained Johathan [sic] A. Simms as trial counsel to represent me in this matter by paying a sum certain for a jury trial."); Def.'s Mot. Vacate 11 ("After being indicted in this matter, attorney Jonathan A. Simms was retained by Petitioner [Blackman] to represent him during a jury trial."); id. at 13 ("Simms accosted Petitioner with the idea to waive his right to a jury trial . . . a jury which Petitioner had initially retained Simms to represent his case before."); id. at 32 ("Beyond dispute, Petitioner had his sights on going to trial.").

Even if Blackman could show that he would have accepted a plea absent Simms' representations, he cannot show that the plea would have resulted in a lighter sentence. All three of his co-conspirators pleaded guilty to a violation of 18 U.S.C. § 924(c). This offense carries a mandatory minimum term of 84 months imprisonment. The government requested sentences of 180 months for Acker, 144 months for Sylvester, and 120 months for Bines. Given their criminal histories and other sentencing factors, all three were ultimately sentenced to 120 months. One of the Court's main concerns in sentencing Blackman was to avoid disparate sentences among the members of this conspiracy. See Tr. Sentencing 19-20 (May 17, 2013) [Dk. No. 98]. Therefore, it is unlikely that Blackman would have received a sentence lower than 120 months even if he had accepted a plea bargain. Accordingly, Blackman cannot satisfy the prejudice prong of Strickland because he cannot credibly demonstrate that but for Simms'

alleged representations, he would have accepted a plea that would have resulted in a sentence shorter than the one imposed.

Moreover, it is unlikely that Blackman could satisfy the deficient performance of counsel prong of Strickland. Unlike in Lafler, Blackman does not allege that Simms advised him to reject the five-year plea offer. See Lafler, 132 S. Ct. at 1384 ("[A]ll parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial."). Indeed, Simms avers that "[a]t no point" did he "advise or persuade Mr. Blackman to reject the Government's offer" and that he "thoroughly advised Mr. Blackman about the ways in which he could substantially lower his sentence through cooperation." Simms' Decl. ¶¶ 10, 12. Therefore, Blackman's claim of ineffective assistance of counsel stemming from Simms' advice regarding the plea offers fails.

c. Advising defendant to waive his right to a jury trial

Blackman claims that Simms violated his right to effective assistance of counsel by requesting that Blackman waive his right to a trial by jury. See Def.'s Mot. Vacate 32; Blackman Aff. ¶ 13. "Courts recognize that an attorney often has valid strategic reasons for recommending his client choose a bench trial." United States v. Smith, No. 1:10-cr-438, 2012 WL 2878248, at *5 (E.D. Va. July 11, 2012); see, e.g., Steele v. United States, No. 04 Civ. 6918, 2005 WL 704868, at *11-12 (S.D.N.Y. Mar. 29, 2005) (collecting cases). In this case, Blackman, through Simms, moved to waive a jury trial due to "the legal complexity" involved in determining whether Blackman "conspired to commit robbery on three different dates." Defendant's Motion to Wiave [sic] Trial by Jury 2 [Dkt. No. 36]. In addition, Blackman affirmed in writing that he "knowingly, freely and voluntarily waive[d] trial by jury" after "having been fully advised by the Court or [his] attorney." Id. at Ex. A. Blackman does not explain why Simms' advice was unreasonable or how a jury trial would have resulted in a

11

different outcome. Accordingly, Blackman has not shown deficient performance or prejudice stemming from his jury trial waiver.

### d. Failure to investigate defendant's criminal history and adequately prepare a defense witness

Blackman contends that Simms failed to investigate his criminal background and failed to adequately prepare Donni Thompson, Blackman's sister, to testify. See Def.'s Mot. Vacate 23-26. Blackman's main complaint is that his prior convictions, including a firearms conviction, were revealed during the cross-examination of Thompson, after Simms opened the door to that line of questioning on direct examination.[4] Specifically, he argues that the Court's learning of his criminal record "helped the Court further credit Sylvester and Bines' story that [Blackman] knew about the guns being used in the robberies." Def.'s Mot. Vacate 24-25.

As with his first three claims, Blackman has not shown that the outcome of his trial was prejudiced in any way as a result of the way in which Simms elicited Thompson's testimony. As the Supreme Court has explained, "In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. It is equally routine for them to instruct juries [not to draw impermissible inferences]; surely we must presume that they follow their own instructions when they are acting as factfinders." Harris v. Rivera, 454 U.S. 339, 346 (1981). Here, the government questioned Thompson about Blackman's prior convictions in order to impeach her direct testimony that Blackman was a law-abiding citizen. The Court is

---

[4] Additionally, Blackman claims that Simms provided deficient advice by allegedly telling Blackman that his criminal record would remain private if he did not testify, thereby causing Blackman to waive his right to testify on his own behalf. See Def.'s Mot. Vacate 32. Blackman argues that Simms' advice prejudiced him because "he did not get to explain to the Court through his own testimony that he was just the 'fence' and had nothing to do with robberies." Id. Contrary to this conclusion, Blackman has not shown that the Court's verdict would likely have been different had he testified, in light of the overwhelming evidence presented regarding his participation in the conspiracy to commit the robberies, the sufficiency of which was affirmed by the Fourth Circuit.

12

presumed to have considered the questions regarding Blackman's prior convictions only for impeachment purposes rather than for impermissible propensity purposes. There is no evidence that the Court improperly relied on its knowledge of Blackman's prior convictions, as those convictions were not referenced during the Court's findings of guilt at the conclusion of the trial. Accordingly, Blackman has not shown that the verdict would likely have been different had Simms altered his questioning or preparation of Thompson.

### e. Failure to call an expert witness

Blackman next contests Simms' failure to call an expert witness at trial. "It is by now well-established that in a criminal trial, defense counsel has the authority to manage most aspects of the defense without first obtaining the consent of the defendant." United States v. Chapman, 593 F.3d 365, 367-68 (4th Cir. 2010) (citing Florida v. Nixon, 543 U.S. 175, 187 (2004)). "Decisions that may be made without the defendant's consent primarily involve trial strategy and tactics, such as what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." Id. (internal quotation marks omitted). Deciding "which witnesses to call is a classic tactical decision left to counsel, and it remains a decision for counsel even when the client disagrees." Id. at 369 (citation omitted). "The reasonableness of the tactical decision actually made by counsel is of course subject to challenge, but the decision is not unreasonable simply because the client expressed a contrary view." Id.

Simms avers that the decision not to call the proposed "cell tower" expert witness was made by Blackman and his mother after the expert's final report supported much of the government's data, which put Blackman in the area of the co-conspirators during the first robbery. Simms' Decl. ¶ 15. Blackman, on the other hand, claims that it was Simms who decided not to call this expert at the last minute against Blackman's wishes. Even assuming

13

Blackman's allegations are true, Simms was entitled to make the strategic decision not to call the expert. See Chapman, 593 F.3d at 369. Such a decision would have been plainly reasonable given that the expert's analysis largely supported the government's case. Therefore, Blackman has not shown that the failure to call the expert witness constituted deficient performance or prejudiced the outcome of the trial.

### f. Failure to impeach two government witnesses

Blackman argues that Simms provided constitutionally ineffective assistance by failing to cross-examine and impeach Sylvester and Bines with prior inconsistent statements from their statements of facts incorporated into their plea agreements and from their sentencing memoranda. See Def.'s Mot. Vacate 15. For example, Blackman points out that in Sylvester's sentencing memorandum, he states that he "never held or brandished a firearm through the offense," Def.'s Mot. Vacate, Ex. 10, yet Sylvester testified at trial that he brought his own firearm to the October 2011 robbery, although Acker was the one who actually brandished it, see Tr. Bench Trial 68, 70-71. Similarly, Bines stated in his sentencing memorandum that he "did not plan to bring, nor did he personally bring, a firearm" to the robberies, Def.'s Mot. Vacate, Ex. 11; however, at trial Bines testified that he, Sylvester, and Acker brought a firearm with them to the June 2011 robbery and that this firearm belonged to Bines, see Tr. Bench Trial 174-75.

"Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess." Higgs v. United States, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (citing Byram v. Ozmint, 339 F.3d 203, 209 (4th Cir. 2003)). Although Simms did not pick out every minor inconsistency, he did attempt to impeach both Sylvester and Bines on cross-examination using their signed statements of facts. Simms also cross-examined both witnesses on bias grounds, as well as on other potentially exculpatory issues such as the extent of

14

Blackman's involvement in the planning discussions. See Tr. Bench Trial 73-78, 82, 87-90, 92-94, 192-94, 201-05. Based on this record, Blackman cannot show that Simms' cross-examination fell outside of "the wide range of reasonable professional assistance" or that the Court's verdict would have been any different had Simms employed additional impeachment efforts.

### g. Failure to timely file a motion for a new trial

Lastly, Blackman argues that Simms was ineffective for failing to file a motion for a new trial within the 14-day timeframe. Def.'s Mot. Vacate 33. Specifically, Blackman contends that he was entitled to a new trial based on the alleged perjury committed by Sylvester and Bines.[5] Simms avers that he spoke with Blackman on February 11, 2013, about possible post-trial motions. Simms' Decl. ¶ 18. He informed Blackman that he did not believe any such motion would be successful and Blackman responded that he understood. Id. Blackman then contacted Simms on February 24, 2013, and insisted that he file a motion for reconsideration of the verdict. Id. ¶ 19. Simms did so, see [Dkt. No. 50], and the Court denied the motion on the merits, observing that the motion simply repeated arguments already addressed at trial. See Order of Mar. 4, 2013 [Dkt. No. 51]. Based on the Court's denial of the motion for reconsideration, Blackman cannot show he suffered any prejudice by the decision not to file a motion for a new trial.

### 2. Claims Involving Appellate Counsel

Blackman complains that his appellate counsel, Miller, provided ineffective assistance by failing to argue on appeal that the Court committed error when it failed to advise Blackman of

---

[5] Blackman also argues that he was entitled to a new trial based on Simms' constitutionally ineffective performance; however, such a claim can usually only be raised on collateral review, not in a post-trial motion for a new trial. See United States v. Baldovinos, 434 F.3d 233, 239 (4th Cir. 2006).

his right to file a motion for a new trial under Fed. R. Crim. P. 33 ("Rule 33"). See Def.'s Mot. Vacate 34. Rule 33 does not contain a requirement that a court inform a defendant of the right to file a motion for a new trial, and Blackman cites to no authority establishing that a court must do so. Moreover, although Simms did not specifically file a motion for a new trial, he did file the motion for reconsideration. Therefore, it was not error for the Court to not inform Blackman that he had the option of moving for a new trial. Accordingly, Blackman cannot show that Miller was ineffective for failing to make a meritless argument. Blackman also cannot show that such a motion would likely have been granted, given the strength of the government's evidence at trial, the Court's denial of the post-trial motion for reconsideration, and the Fourth Circuit finding the evidence sufficient to sustain Blackman's convictions.

In sum, the evidence against Blackman was overwhelming and none of his of ineffective assistance of counsel claims overcomes the "strong presumption" that the performance of his trial and appellate counsel was reasonable or "undermine[s] confidence in the outcome." See Strickland, 466 U.S. at 689, 694.

### C. Prosecutorial Misconduct Claims

Lastly, Blackman moves to vacate his convictions due to prosecutorial misconduct.[6] "[T]he test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper and (2) such remarks or conduct must have prejudicially affected [the defendant's] substantial rights so as to deprive the defendant of a fair trial." United States v. Bereano, 161 F.3d 3 (4th Cir. 1998) (internal quotations and citations omitted).

---

[6] Although Blackman failed to raise any claims of prosecutorial misconduct on direct appeal, he argues that he is entitled to present these claims due to the ineffective assistance of his appellate counsel. See Def.'s Mot. Vacate 36.

16

Blackman claims that the government committed a due process violation by soliciting false testimony from Sylvester and Bines. See Def.'s Mot. Vacate 38. The alleged false statements related to the minor inconsistencies, discussed above, between Sylvester's and Bines' sentencing memoranda, statements of facts, and their testimony at Blackman's trial. These inconsistencies do not show that Sylvester's or Bines' testimony at Blackman's trial was false, nor do they lead to the conclusion that Blackman was deprived of a fair trial. Simms used their statements of facts to impeach them on cross-examination, and he argued about their credibility and potential bias against Blackman in his closing statement. See Tr. Bench Trial 298, 300-01. Nevertheless, the Court found that there was "no question" that the evidence supported a conspiracy between Sylvester, Acker, Bines, and Blackman to commit all three robberies and supported the conclusion that Blackman "would either know or have reason to believe that a firearm would be used in the subsequent robberies." Id. at 304. Moreover, on appeal, the Fourth Circuit found that the evidence at trial was "plainly sufficient" to support Blackman's convictions under both counts. See Blackman, 746 F.3d at 141-142 & n.1.

Blackman also contends that the government committed a Brady violation based on Sylvester's and Bines' testimony at trial. A Brady due process violation occurs where the government fails to provide a defendant with material exculpatory evidence. See Brady v. Maryland, 373 U.S. 83 (1963). To establish a Brady violation, a defendant must show that (1) the evidence at issue is favorable to him; (2) the prosecution possessed the evidence and failed to disclose it; and (3) prejudice ensued because the evidence was material. See United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001) (citations omitted). Blackman has not identified any evidence that the government withheld in this case. Accordingly, Blackman has failed to establish any of his prosecutorial misconduct claims.

### III.   CONCLUSION

Because the Court finds no merit in any of Blackman's claims, there is no need for an evidentiary hearing, and his Motion to Vacate will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 17 day of June, 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge